**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SEYED TAHER KAMELI, and the LAW OFFICES OF KAMELI & ASSOCIATES, P.C., | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 22 C 219 ) |
| AHMAD GHANEMZADEH, individually, and A.G.Z. ZPIZZA, LLC, | ) Judge Joan H. Lefkow ) ) |
| Defendant. | ) |

**OPINION AND ORDER**

Seyed Taher Kameli and the Law Offices of Kameli & Associates, P.C. (K&A)

(collectively, Kameli) filed this lawsuit against Ahmad Ghanemzadeh and A.G.Z. Zpizza, LLC

(Zpizza), claiming breach of contract, unjust enrichment, civil conspiracy, aiding and abetting

civil conspiracy, tortious interference with an existing contract, tortious interference with

prospective economic advantage, defamation, and intentional infliction of emotional distress, all

under Illinois law.[1] (Dkt. 1.) Defendants have moved to dismiss all claims. (Dkt. 27.) For the

reasons stated below, the motion is granted.

---

[1] Kameli and K&A allege that they are citizens of Illinois. (Dkt. 1 ¶¶ 2-3.) They also allege that at all relevant times, Ghanemzadeh was the sole member of the Zpizza LLC (*id.* ¶ 5), so Zpizza has the citizenship of Ghanemzadeh. The plaintiffs allege that Ghanemzadeh is an Iranian citizen (*id.* ¶ 12) with his principal residence in Iran (*id.* ¶ 5). This is not necessarily dispositive—if Ghanemzadeh were an Iranian citizen but a lawful permanent resident of the United States, the parties would need to further address whether he might be domiciled in any U.S. state. See 28 U.S.C. § 1332(a)(2). But Kameli pleads that Ghanemzadeh's Form I-526 (his application for conditional lawful permanent residency) was still pending with USCIS as of the date of the complaint (dkt. 1 ¶ 35), so the court understands that Ghanemzadeh had not obtained legal permanent residence as of the filing of this case and thus remains a citizen of a foreign state for diversity jurisdiction purposes. Complete diversity exists and the amount in controversy alleged is greater than $75,000, so the court has jurisdiction under § 1332(a). Defendants do not object to venue in this district. The parties agree that Illinois law applies.

## BACKGROUND

In July 2016, Kameli, as the law firm of K&A, entered into a legal services agreement with Ghanemzadeh, a citizen of Iran, for the purpose of assisting Ghanemzadeh in obtaining an EB-5 visa from U.S. Citizenship and Immigration Services (USCIS). An EB-5 visa permits temporary residency by a foreign national who can invest at least $500,000 in a new commercial enterprise that will create at least 10 new jobs. Ghanemzadeh wanted to form Zpizza Taproom Restaurant. For a fee of $100,000, Kameli committed to preparing the necessary documents for the visa application and for the new commercial enterprise as required by the visa application, and to responding to any additional requests for documentation or information issued by USCIS. Ghanemzadeh acknowledged in the legal services agreement that K&A could not guarantee success in obtaining the visa. Kameli prepared the visa application. Between 2018 and 2020, K&A also granted Ghanemzadeh's requests made by phone, email, or social media to lend him and Zpizza money for use in the development and operation of Zpizza and for legal fees in a California case against Ghanemzadeh. In all, K&A made loans to Ghanemzadeh totaling more than $200,000. Ghanemzadeh promised to repay the loans once construction of the restaurant was complete. Despite the restaurant being completed and becoming operational by early 2019, Ghanemzadeh had not repaid the loans as of the filing of this suit in January 2022.

In April 2020, Ghanemzadeh and eight other K&A immigration clients terminated Kameli as their counsel in identical terms blaming him for the failure of their businesses and demanding return of their legal fees and their investment funds. They also threatened to sue if their demands were not met. Kameli believes that the clients made a plan to extort Kameli and the firm. Kameli believes that Ghanemzadeh initiated the revolt, stating to the others that Kameli had defrauded them, that Kameli owned Zpizza, and that he had misappropriated investment

2

funds. In 2021, Ghanemzadeh and the other clients reported these allegations to Iran's

Prosecutor's Office. The Prosecutor contacted INTERPOL, and this resulted in widespread

reportage on Iranian media that Kameli was a "fraud ringleader."

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss challenges the sufficiency of the complaint to state a

claim upon which relief may be granted. The complaint "must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). The

allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556

U.S. at 678. In ruling on 12(b)(6) motions, the court accepts as true all well-pleaded facts in the

complaint and draws all reasonable inferences in the plaintiff's favor. *See Taha* v. *Int'l Bhd. of*

*Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020). While the plaintiff "need not allege

each evidentiary element of a legal theory to survive a motion to dismiss," *Freeman* v. *Metro.*

*Water Reclamation Dist. of Greater Chi.*, 927 F.3d 961, 965 (7th Cir. 2019), he must "provide

more than mere labels and conclusions or a formulaic recitation of the elements of a cause of

action for [his] complaint to be considered adequate," *Kaminski* v. *Elite Staffing, Inc.*, 23 F.4th

774, 776 (7th Cir. 2022) (citations omitted).

## ANALYSIS

**I.    Breach of Contract and Unjust Enrichment (Counts I, II, and III)**

Kameli contends that he is owed $200,000 on unspecified agreements between Kameli

and Ghanemzadeh, either for breach of contract or under the equitable doctrine of unjust

enrichment. Ghanemzadeh argues that the agreement is void as against public policy. It is true

that the Illinois Rules of Professional Conduct of 2010 (IRPC) prohibit an attorney from advancing funds to a client or entering into any business arrangement with a client absent particular safeguards that do not appear to exist here.[2] Neither is an attorney allowed to advance funds to a client other than for costs and expenses of litigation in a contingency case or for an indigent client. *See* IRPC 1.8(c)(1), (2); *see also Topps* v. *Pratt & Callis, P.C.*, 206 Ill. App. 3d 298, 300 (1990) ("Advancing financial assistance to a client is contrary to the public interest."). The IRPC "have the force of law, meaning the failure to comply with the rules can make a contract unenforceable." *Edelson PC* v. *Girardi*, No. 20 C 7115, 2022 WL 3212329, at *2 (N.D. Ill. Aug. 9, 2022) (citing *In re Vrdolyak*, 137 Ill. 2d 407, 422 (1990)). An agreement made in violation of these rules is void. *See*, *e.g.*, *Topps*, 206 Ill. App. 3d at 300 (holding that agreement that attorney could deduct from client's share of worker's compensation settlement money the attorney had advanced for client's living expenses was void); *Donald W. Fohrman & Assoc. Ltd.* v. *Mark D. Alberts, P.C.*, 2014 IL App (1st) 123351, ¶ 56 (2014) (voiding attorney's lien where law firm had failed to strictly comply with disclosure provision of the Code of Professional Responsibility (the predecessor of IRPC) regarding a fee sharing agreement.) Furthermore, a wrongdoer has no recourse through the equitable doctrine of unjust enrichment. *See First Trust & Sav. Bank of Kankakee* v. *Powers*, 393 Ill. 97, 103 (1946) ("Where a contract is illegal or

---

[2] The Illinois Rules of Professional Conduct provide, with respect to current clients, that:

> A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless: (1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client; (2) the client is informed in writing that the client may seek the advice of independent legal counsel on the transaction, and is given a reasonable opportunity to do so; and (3) the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction.

Ill. Sup. Ct. R. Pro. Conduct 1.8(a) (2010).

4

against public policy, a court of equity will not, at the instance of one of the parties who participates in the illegal or immoral intent, either compel the execution of the agreement or set it aside after it has been executed.")

That a contract is illegal is an affirmative defense, *see* Fed. R. Civ. P. 8(c)(1), and dismissing a complaint because it has not overcome an affirmative defense is not warranted unless Kameli has "plead[ed] himself out of court by alleging facts sufficient to establish" the defense. *Cancer Found., Inc.* v. *Cerberus Cap. Mgmt., LP*, 559 F.3d 671, 674–75 (7th Cir. 2009). Here, Kameli at least tacitly admits that he made loans for the purpose of assisting in forming the business without complying with Rule 8.1(a). This conduct is forbidden as a pecuniary interest adverse to the client. And he has advanced funds to the client for purposes of his representation, contrary to Rule 8.1(c)(1). Because the complaint alleges unwritten contracts and loans to Ghanemzadeh, Kameli has pleaded an unenforceable contract, and the court must dismiss the breach of contract and unjust enrichment claims.

## II. Conspiracy to Commit Extortion, Aiding and Abetting Civil Conspiracy (Counts IV, V)

Kameli's theory of liability rests on the suspected meeting or meetings among a number of his immigration clients where the clients together decided to terminate the attorney-client relationship with Kameli and to demand return of their legal fees and investment funds, threatening to sue if their demands were not met. Ghanemzadeh argues that these facts do not state a claim for extortion (or that Illinois does not recognize such a claim).

Illinois seems to recognize a common law claim for extortion or "blackmail." As stated in *Jordan* v. *Knafel*, 355 Ill. App. 3d 534, 540 (2005), "[E]xtortion and blackmail are synonymous terms. Blackmail has been defined as '[a] threatening demand made without justification.' The gravamen of these offenses is the exercise of coercion or an improper influence." (cleaned up).

5

*See Becker* v. *Zellner*, 292 Ill. App. 3d 116, 130 (1997) (acknowledging existence of a civil cause of action for extortion, although holding that plaintiff had not established his claim). Accordingly, extortion qualifies as a predicate tort on which a claim for civil conspiracy or aiding and abetting might rest.

Kameli alleges a demand and a threat. A threat to sue, however, is not actionable as intimidation, extortion, or blackmail, at least if not made "in bad faith or without an honest belief that a cause of action … exists." *Becker*, 292 Ill. App. 3d at 129 (citing *Enslen* v. *Village of Lombard*, 128 Ill. App. 3d 531, 533 (1984) (discussing similar tort of duress)). Indeed, the purpose of a lawsuit is to obtain the assistance of a court to facilitate peaceful resolution of a dispute. Ghanemzadeh and the clients did not extort Kameli by threatening to sue.

Since the complaint fails to allege facts that could support a claim of extortion, the conspiracy and aiding-and-abetting claims fail as well. *See, e.g., National Council on Compensation Ins., Inc.* v. *American Intern. Group, Inc*., No. 07 C 2898, 2009 WL 466802, at *16 (N.D. Ill. 2009) ("[W]here the torts underlying a civil conspiracy claim are subject to dismissal, the civil conspiracy claim cannot withstand a motion for dismissal."); *F.D.I.C.* v. *Parzygnat*, No. 10 C 7038, 2011 WL 3704731, at *6 (N.D. Ill. Aug. 23, 2011) (aiding and abetting is a theory of liability for a separate tort).[3]

## III.    Tortious Interference Claims (Counts VI, VII, and VIII)

Kameli's theory of liability is that Ghanemzadeh defamed him to other immigration and business clients by making false accusations about his integrity and accusing him of fraud and misappropriation of funds. These false statements caused the clients to terminate their relationships with Kameli and refuse to pay for his services. Ghanemzadeh argues that the claims

---

[3] Kameli objects that the cases Ghanemzadeh relies on are only district court cases, but he cites no authority to the contrary.

should be dismissed, first, because the allegations are based on information and belief and, second, because a client has an absolute right to terminate counsel and such cannot be the basis for a breach of contract claim, citing *Rhoades* v. *Norfolk & Western Railway Co.*, 78 Ill. 2d 217, 229–30 (1979) (stating the right to terminate counsel for any reason is an implied right that cannot give rise to a common law claim of breach of contract).

Kameli responds to the first argument by arguing that the court applies Illinois procedural law to an Illinois claim, which is decidedly wrong. *See Erie R. Co.* v. *Tompkins*, 304 U.S. 64 (1938). Federal courts allow pleading on information and belief, particularly where a party does not have access to the information needed to plead based on knowledge. *See*, *e.g.*, 5 Fed. Prac. & Proc. Civ. § 1224 (4th ed. 2022) (citing cases). The court accepts the pleaded facts as true and turns to the second argument.

In Illinois, "[a]n action for tortious interference with contractual relations is not the proper vehicle for a discharged attorney seeking to recover damages." *Canel and Hale, Ltd*. v. *Tobin*, 304 Ill. App. 3d 906, 918 (1999) (citations omitted).  But an attorney may claim tortious interference with a prospective contractual relationship. *Id*. "To establish a claim for tortious interference with a prospective contractual relationship, plaintiff must have a reasonable expectation of entering into a valid business relationship, defendant must know of the expectancy and intentionally and maliciously interfere to defeat the expectancy, and plaintiff must be injured." *Audition Div., Ltd.* v. *Better Business Bureau of Metropolitan Chicago, Inc.*, 120 Ill. App. 3d 254, 258 (1983) (citations omitted).

In *Canel and Hale*, the court ruled that a cause of action had been stated where the plaintiff alleged "that she had an attorney-client relationship with the clients from which she expected to earn substantial legal fees, that defendants were aware of that relationship, that

7

defendants induced the clients to discharge her as their attorney, and that the clients in fact discharged her at defendants' urging." 304 Ill. App. 3d at 918. Kameli alleges that he had existing attorney client relationships, and that his prospective advantage was the prospect of continuing the relationships into the future. But he does not identify any specific matter for which he reasonably expected any of the clients to engage him. Rather, he states that "K&A reasonably expected that the business relationship would continue due [to] the clients having to pay the last installment of attorneys' fees upon approval of their Form I-526 by the USCIS." (Dkt 29 at 8). And he does not allege that Ghanemzadeh knew of a representation agreement other than those existing at the time of the claimed interference. He cites no case where such an allegation was sufficient to state a reasonable expectation of prospective legal fees, and the court knows of none. As such, Kameli does not plead a cause of action for interference with prospective economic advantage.[4]

## IV.     Defamation and Intentional Infliction of Emotional Distress (Counts IX and X)

Kameli appears to have abandoned his claim for defamation based on its one-year statute of limitations. He rests his IIED claim on the allegations that Ghanemzadeh made false reports to Iran's Prosecutor's Office, which contacted INTERPOL, which led to publicity on Iranian national television channels and various news broadcasting agencies, causing him severe emotional distress. Ghanemzadeh seeks dismissal because reporting to law enforcement authorities cannot be extreme and outrageous conduct, citing *Schiller* v. *Mitchell*, which states, "We do not believe that the body of law supports plaintiffs' contention that making reports to the police and other officials constitutes extreme and outrageous conduct." 357 Ill. App. 3d 435, 450

---

[4] If Ghanemzadeh or other clients do not pay Kameli for services already rendered he may pursue payment under a *quantum meruit* theory. *See Rhoades*, 78 Ill. 2d at 230 (rejecting former rule that a discharged attorney is entitled to contract fees if the discharge was without cause and holding that quantum meruit recovery is the proper remedy).

(2005) (citations omitted). Kameli contends that reporting to a foreign country which has no diplomatic relationship with the United States is (or should be) an exception because he has no way of refuting the accusations.

To establish a claim for intentional infliction of emotional distress, a plaintiff must show (1) that the conduct was truly extreme and outrageous, (2) that the actor intended that his conduct inflict severe distress or knew that there was a high probability that his conduct would inflict such distress, and (3) that the conduct in fact caused severe emotional distress. *Id*. at 447. *Schiller* held that more than a dozen complaints to the police about a neighbor was not extreme and outrageous, relying on cases holding that reports to law enforcement authorities were not extreme and outrageous. *Id.* at 450 (citing *Balark* v. *Ethicon, Inc.,* 575 F.Supp. 1227, 1231 (N.D. Ill. 1983) (supplying the plaintiff's name to the FBI as a suspect in the "Tylenol murders" did not constitute extreme and outrageous conduct); *Adams* v. *Sussman & Hertzberg, Ltd.,* 292 Ill. App. 3d 30, 39 (1997) (a false complaint to the police of criminal trespass to vehicle that resulted in the plaintiff's arrest was not extreme and outrageous conduct)). Lacking any reasoned argument why Ghanemzadeh's report is of a different category, Kameli has failed to persuade the court that the report to the Prosecutor's Office was extreme and outrageous.

## CONCLUSION AND ORDER

For the reasons stated above, the motion to dismiss the complaint is granted. Plaintiff is given to April 20, 2023 to file an amended complaint if he can do so consistently with this opinion and Rule 11 of the Federal Rules of Civil Procedure.

Date: March 30, 2023

_____
U.S. District Judge Joan H. Lefkow

9